IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT LOREN BOND,

          Petitioner,                    No. CIV S-99-2150 LKK DAD P

     vs.

RICHARD A. RIMMER, et al.,

          Respondents.              <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

          Petitioner is a state prisoner proceeding by counsel with a petition for writ of habeas corpus.  This case is one of five that have been related for administrative purposes.  On September 9, 2005, the cases came before the court for hearing of respondents' motions to dismiss petitioners' amended petitions as containing untimely claims that do not relate back to claims that were timely filed.  Glenn R. Pruden appeared for the moving parties.  Lindsay Anne Weston appeared for petitioner Bond.  The parties' arguments were heard, and the motions were taken under submission.  For the reasons set forth below, the undersigned will recommend that respondents' motion be granted.

PROCEDURAL HISTORY

          On October 2, 1991, Gary Summar was murdered in Trinity County.  On December 16, 1991, Robert Bond, Leafe Dodds, Robert Fenenbock, Ernest Knapp, Anthony

1

Lockley, and Bernard MacCarlie were arraigned in Trinity County Superior Court on charges of participating in the murder.  On October 5, 1992, Barbara Adcock, Cherri Frazier, and Sue Hamby were also arraigned in Trinity County on charges of participating in the murder.

Pretrial litigation in the Trinity County Superior Court lasted through September 1993.  During this time, motions for multiple juries, motions to determine the competence of a key government witness, motions for severance, motions for change of venue, motions to dismiss or demur, and other motions were resolved in the Trinity County Superior Court.  On August 16, 1993, the court ruled that there would be four separate trials, with two trials involving dual juries to be conducted in Solano County Superior Court and two additional trials to be conducted in either Stanislaus or San Joaquin County.  Subsequently, however, Ernest Knapp was dismissed as a defendant, and the remaining defendants were prosecuted in three rather than four trials.

The first two trials were conducted in Solano County, while the third was conducted in Contra Costa County.  All three trials were prosecuted by Robert Maloney, a special prosecutor appointed to the case.  Defendants Hamby, Fenenbock, and Frazier were tried in the first trial, which began on November 15, 1993, and concluded on February 4, 1994; judgment was entered on March 16, 1994.  Defendants Bond, MacCarlie, and Dodds were tried in the second trial, which commenced in September 1994; judgment was entered on January 20, 1995. The trial of defendants Adcock and Lockley was conducted in 1995.

I.  Petitioners Hamby, Fenenbock, and Frazier

In the first trial, defendant Fenenbock was convicted of first degree murder, with enhancements for use of a weapon and infliction of great bodily injury, but was acquitted of conspiracy to commit murder.  Defendants Hamby and Frazier were convicted of conspiracy to commit murder but were acquitted of murder.

On appeal, defendant Fenenbock raised seven claims, alleging there was insufficient evidence to support his conviction, two jury instructions were erroneous, several errors stemming from the testimony of child witness Randy Hogrefe, and the trial court

erroneously allowed rebuttal witnesses.  Defendant Hamby joined in the claims raised by defendants Fenenbock and Frazier and raised additional claims concerning jury instructions and trial court error with regard to rebuttal evidence.  Defendant Frazier joined in the claims raised by defendants Hamby and Fenenbock and raised additional claims concerning jury instructions and her sentence.  Defendant Frazier also filed a state habeas petition claiming ineffective assistance of trial counsel.

In a partially published opinion filed on July 1, 1996, People v. Fenenbock, et al., 46 Cal. App. 4th 1688 (1996), the California Court of Appeal for the First Appellate District affirmed the judgments of conviction entered against defendants Hamby, Fenenbock, and Frazier and denied defendant Frazier's habeas petition.  On October 2, 1996, the California Supreme Court denied review.  The defendants did not file petitions for certiorari in the United States Supreme Court.

On January 31, 1997, Sue Hamby filed a pro se federal habeas petition raising two claims.  The respondent filed an answer to her petition on April 11, 1997, and a pro se traverse was filed on May 14, 1997.  On September 12, 1997, Robert Fenenbock filed a pro se federal habeas petition raising seven claims, and on November 20, 1997, Cherri Frazier filed a pro se federal habeas petition raising two claims.  On December 4, 1997, the Federal Defender was appointed to represent petitioner Fenenbock.  The Hamby, Fenenbock, and Frazier cases were related for administrative purposes on December 24, 1997, and the Federal Defender was appointed to represent petitioners Hamby and Frazier.  Jolie Lipsig subsequently substituted in as counsel for petitioner Fenenbock, and Janice Lagerlof substituted in as counsel for petitioner Hamby.  At the initial status conference held on February 26, 1998, the undersigned granted the first of many continuances requested by petitioners for the purpose of obtaining and reviewing the voluminous records of their trial and of the two subsequent trials.  On March 16, 1999, the California Court of Appeal filed its decision in the consolidated appeals of co-defendants Bond, MacCarlie, Adcock, and Lockley.  Petitioners Hamby, Fenenbock, and Frazier were eventually

1   ordered by the undersigned to file amended petitions and any accompanying motions by May 1,

2   2000.  However, on April 5, 2000, petitioners moved for leave to conduct discovery regarding

3   claims not yet presented to any court.  The motion was denied, and further continuances were

4   granted.

5            On September 24, 2001, petitioners moved to hold their federal proceedings in

6   abeyance.  Petitioners indicated their intention to file state exhaustion petitions by November 16,

7   2001.  In opposition, respondents argued that the statute of limitations had expired and any new

8   claims would be untimely.  In findings and recommendations filed November 1, 2001, the

9   undersigned recommended that petitioners' joint motion be granted and that all petitioners be

10  required to file a motion for leave to amend or an amended federal habeas petition within thirty

11  days after disposition of their state habeas petitions.  The findings and recommendations were

12  adopted on December 4, 2001, and the Hamby, Fenenbock, and Frazier cases were stayed.

13  II.  Petitioners Bond and MacCarlie

14           In the second trial in the Solano County Superior Court, defendant Dodds was

15  acquitted of all charges.  Defendant MacCarlie was convicted of conspiracy to commit murder,

16  two counts of kidnaping, mayhem, and assault with a deadly weapon, plus enhancements for use

17  of a weapon and infliction of great bodily injury, but the jury was unable to reach a verdict on the

18  charge of murder.  The trial court declared a mistrial on the murder charge against defendant

19  MacCarlie.  Defendant Bond's separate jury was also unable to reach a verdict on the charge of

20  murder, and a mistrial was declared to that count.  Defendant Bond was convicted of conspiracy

21  to commit murder and acquitted of the remaining charges.

22           On appeal, defendant Bond claimed that there was insufficient evidence of

23  conspiracy to commit murder, the trial court erroneously instructed the jury on the requisite intent

24  for conspiracy, and the trial court failed to require the jury to determine whether petitioner

25  conspired to commit first or second degree murder.  Defendant Bond joined in all applicable

26  arguments raised by defendant MacCarlie.  Defendant MacCarlie argued on appeal that (1) the

1    trial court erroneously instructed the jury on the requisite intent for conspiracy, lesser included

2    offenses to conspiracy to commit murder, and heat of passion; (2) trial counsel was ineffective

3    because he failed to request instructions on lesser included offenses to conspiracy to commit

4    murder; (3) the trial court erred by taking partial verdicts before replacing a juror who had

5    become ill; and (4) the trial court erroneously calculated presentence credits.

6             In an unpublished opinion filed March 16, 1999, the California Court of Appeal

7    for the First Appellate District affirmed the convictions of defendants Bond and MacCarlie but

8    remanded for modification of defendant MacCarlie's presentence credits.  On June 30, 1999, the

9    California Supreme Court denied review.  Neither defendant Bond nor defendant MacCarlie filed

10   a petition for certiorari in the United States Supreme Court.

11            On October 29, 1999, Robert Bond filed a pro se federal habeas petition alleging

12   that there was insufficient evidence of conspiracy to commit murder and that the jury instructions

13   on conspiracy to commit murder violated due process.  The Federal Defender was appointed to

14   represent petitioner Bond, and the case was set for a status conference.  Lindsay Anne Weston

15   substituted in as counsel for petitioner Bond.  The court declined to relate the Bond case to the

16   Hamby, Fenenbock, and Frazier cases.  Several continuances were thereafter granted in the Bond

17   case.

18            On August 23, 2000, Bernard MacCarlie filed a pro se federal habeas petition

19   alleging that the jury instructions on conspiracy to commit murder violated due process, the

20   failure to give instructions on conspiracy to commit second degree murder violated due process

21   and ex post facto laws, trial counsel was ineffective for failing to request an instruction on

22   conspiracy to commit second degree murder, the trial court's failure to instruct on heat of passion

23   violated due process and ex post facto laws, and the verdict was coerced as a result of the court's

24   taking partial verdicts before a juror was excused for illness.  Petitioner MacCarlie's application

25   to consolidate his case with petitioner Bond's was denied.  The court appointed the Federal

26   Defender to represent petitioner MacCarlie and set the case for a status conference.  Margaret

1   Littlefield substituted in as counsel for petitioner MacCarlie.  Thereafter, several continuances

2   were granted at the request of counsel for the various petitioners.

3           A status conference was held in the Bond and MacCarlie cases on October 26,

4   2001, and a scheduling conference was set for January 18, 2002.  The Bond and MacCarlie cases

5   were related to the Hamby, Fenenbock, and Frazier cases for administrative purposes on

6   December 12, 2001.  On January 18, 2002, a deadline was set for the filing of abeyance motions

7   by petitioners Bond and MacCarlie.  The motions were filed, and respondents opposed them on

8   the ground that the statute of limitations had expired and any new claims would be untimely.  In

9   findings and recommendations filed April 23, 2002, the undersigned recommended that

10  petitioners' motions be granted and that each petitioner be required to file an amended federal

11  habeas petition within thirty days after disposition of their state habeas petitions.  The findings

12  and recommendations were adopted on May 20, 2002, and the Bond and MacCarlie cases were

13  stayed.

14  III.  Further State Court Proceedings

15          On November 26, 2001, petitioner Hamby filed a habeas petition in the California

16  Supreme Court raising nine claims, and petitioner Frazier filed a petition raising fifteen claims.

17  On December 10, 2001, petitioner Fenenbock filed a petition raising nine claims.  On July 19,

18  2002, petitioner MacCarlie filed a petition raising ten claims.  On August 20, 2002, petitioner

19  Bond also filed a petition raising ten claims.  In a single order filed June 25, 2003, the California

20  Supreme Court denied the exhaustion petitions filed by all five petitioners.

21  IV.  Further Federal Court Proceedings

22          On various dates after August 4, 2003, four of the five petitioners filed amended

23  habeas petitions as a matter of right.  Petitioner Fenenbock's amended petition alleges ten claims,

24  including the seven raised in his original petition.  Petitioner Frazier's amended petition alleges

25  sixteen claims, including the two raised in her original petition.  Petitioner Bond's amended

26  petition alleges twelve claims, including the two raised in his original petition.  Petitioner

MacCarlie's amended petition alleges fourteen claims, including the five raised in his original petition.  Because the respondent previously filed an answer to petitioner Hamby's original petition, petitioner Hamby filed a motion for leave to amend.  Respondent stipulated to the filing of petitioner Hamby's amended petition while reserving the right to raise a statute of limitations defense to any untimely claims.  Petitioner Hamby's amended petition alleges eleven claims, including the two raised in her original petition.

On December 5, 2003, respondents filed their first motions to dismiss petitioners' newly added claims as barred by the statute of limitations.  The Ninth Circuit subsequently ruled that the transaction or occurrence at issue in a federal habeas petition for purposes of Rule 15(c) is the petitioner's state trial and conviction and that all new claims alleged in an amended petition relate back to the date of filing the original petition and thereby avoid the one-year statute of limitations.  Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004).  The undersigned recommended that respondents' motions to dismiss be denied, and the findings and recommendations were adopted on October 1, 2004.

On January 4, 2005, respondents moved to stay these proceedings pending Supreme Court action in Felix v. Mayle.  Respondents' motions were heard and denied on February 4, 2005, but respondents were granted six months to respond to the amended petitions.  On June 23, 2005, the Supreme Court held that new claims alleged in an amended habeas petition do not relate back to the date of the original petition if the new claims are supported by facts that differ in time and type from those set forth in the original petition.  Mayle v. Felix, 545 U.S. 644, 125 S. Ct. 2562 (2005).  Respondents renewed their motions to dismiss in light of the Supreme Court's decision with those motion being filed on August 4, 2005.

THE PARTIES' ARGUMENTS

I.  Respondents' Motion to Dismiss

Respondents move to dismiss petitioner Bond's amended petition on the ground that it contains claims that are untimely under the AEDPA statute of limitations and do not relate

7

back to claims that were timely filed.  Respondents assert that petitioner was aware at all times of respondents' intention to oppose petitioner's newly exhausted claims as untimely, yet petitioner did not include in his amended petition any reasons why the new claims should not be dismissed as time barred.  Respondents acknowledge that petitioner offered such reasons in opposition to respondents' first motion to dismiss, but they decline to assume petitioner will rely on the same reasons in opposing their renewed motion to dismiss.

Respondents contend that the new claims alleged in petitioner Bond's amended petition are untimely.  Respondents identify the newly added claims as Claims 1-8 and Claims 11-12.  Respondents set forth a history of petitioner's proceedings in state and federal court that includes the following key dates:

| June 30, 1999 | California Supreme Court denied review on direct appeal |
| September 28, 1999 | State court judgment became final upon expiration of the time to file a petition for certiorari in the United States Supreme Court |
| October 29, 1999 | Federal habeas petition was filed, alleging two claims |
| September 28, 2000 | One-year period of limitation expired |
| August 20, 2002 | First state habeas petition was filed in California Supreme Court, alleging ten claims |
| June 25, 2003 | California Supreme Court summarily denied the habeas petition |
| September 2, 2003 | Petitioner filed an amended federal habeas petition alleging twelve claims, including the two original claims (now designated claims 9 and 10) |

Respondents point to the date on which petitioner's judgment became final, the date on which the statute of limitations expired, and the date, almost three years after the statute of limitations expired, on which petitioner filed his amended federal habeas petition raising new claims.  Respondents conclude that they have met their burden to plead and prove that petitioner's new claims are untimely and must be dismissed unless petitioner can meet his burden of establishing a factual basis for tolling the statute in some way that will circumvent the limitations period for him.  Respondents compare each of petitioner's new claims with those

1    alleged in petitioner's initial federal habeas petition and contend that not one new claim relates

2    back to any claim alleged in the original, timely pleading.  With regard to Claim 12, alleging

3    cumulative error, respondents also argue that the Supreme Court has not recognized the

4    availability of habeas relief for such a claim and that relief on that ground is <u>Teague</u>-barred.

5    II.  <u>Petitioner's Opposition</u>

6            Petitioner Bond acknowledges that his judgment became final on September 28,

7    1999, and that the statute of limitations expired on September 28, 2000, after he filed a timely

8    federal habeas on October 29, 1999.  Petitioner asserts that respondents' motion to dismiss

9    should be denied for four reasons set forth in his opposition.  Petitioner further asserts that he

10   joins in all applicable arguments raised by petitioners in the four related cases in opposition to

11   respondents' first motions to dismiss as well as in opposition to respondents' second motions to

12   dismiss.

13           A.  <u>Rule 15(c) Relation Back</u>

14           Petitioner contends first that most of his new claims relate back to the two claims

15   he raised in his timely initial federal petition or to claims raised in petitions timely filed in the

16   four related cases.

17               1.  <u>Claims That Relate Back to Petitioner's Original Petition</u>

18           Petitioner argues that his new Claims 1, 2, 4, 5, 7, and 12, as well as portions of

19   Claims 6 and 8, relate back to his two timely filed claims.

20           Petitioner asserts that his original Claim 1, presented as Claim 10 in the amended

21   petition, put respondents on notice that (1) petitioner is "challenging all of the evidence used to

22   support that there was an agreement to kill Hop or that he intended Hop be killed," (2) petitioner

23   was specifically challenging the truthfulness and credibility of Randy Hogrefe's testimony, (3)

24   petitioner was claiming Hogrefe's testimony was not reliable, reasonable, or of solid value, was

25   not credible, and was replete with inconsistent statements, and (4) petitioner may have been

26   guilty only of agreeing Hop should be assaulted.

Petitioner describes his original Claim 2, presented as Claim 9 in the amended petition, as alleging "constitutional error because of instructional error in failing to accurately instruct that he had an intent to kill the victim."  Petitioner asserts that this claim put respondents on notice that he was challenging all of the facts and evidence that showed his intent to kill and necessarily challenged the evidence of a conspiracy.  Petitioner argues that this claim also challenged Hogrefe's testimony as not credible due to the witness's inconsistent statements.

Petitioner asserts that the operative facts of his new Claim 1, alleging that Hogrefe's testimony was based on a false memory created by government manipulation, coercion, and coaching, relate directly back to the original Claims 1 and 2, both of which challenged the truthfulness, credibility, and reliability of Hogrefe's testimony at petitioner's trial.

Petitioner asserts that the operative facts of his new Claim 2, alleging denial of defense access to Hogrefe, relate directly back to the facts of the original Claims 1 and 2, because those claims challenged the truthfulness, credibility, and reliability of Hogrefe's testimony and it was the denial of access to and sequestration of Hogrefe that allowed the false memories to be planted.

Petitioner asserts that the operative facts of his new Claim 4, alleging his actual innocence, relate back to the facts of the original Claims 1 and 2 because in those original claims he put respondents on notice that the evidence presented at trial, along with the defective jury instructions, did not support petitioner's conviction for conspiracy to commit murder and at most supported a conviction for conspiracy to commit assault against the victim.

Petitioner asserts that the operative facts of his new Claim 5, alleging unfair investigative techniques, relate directly back to the original Claims 1 and 2 because the new claim asserts, among other things, that false memories were implanted in Hogrefe by the lead investigative officer, who coerced, manipulated, and intimidated Hogrefe and other prosecution witnesses.

/////

1    Petitioner asserts that most of the operative facts underlying his new Claim 6,

2    alleging repeated prosecutorial misconduct, relate directly back to the original Claims 1 and 2

3    because the prosecutor knowingly elicited false testimony from witnesses to support Hogrefe's

4    testimony, prevented Hogrefe from being interviewed by the defense, and assisted in planting

5    Hogrefe's false memory.

6    Petitioner asserts that the operative facts underlying his new Claim 7, in which he

7    alleges that his conviction of conspiracy was based on overt acts that were not separate from the

8    charged conspiracy agreement, relate back to the original Claims 1 and 2 because those claims

9    challenged that there was a conspiracy.

10    Petitioner asserts that the operative facts of the following parts of his new Claim

11    8, alleging ineffective assistance of trial counsel, relate directly back to the operative facts of the

12    original Claims 1 and 2 challenging the reliability of Hogrefe's testimony:  failure to present

13    expert testimony regarding Hogrefe's false memories, failure to present evidence of the

14    investigating officer's bad faith regarding Hogrefe's false testimony, and failure to object to or

15    make a record of police misconduct regarding Hogrefe's false testimony.  Petitioner argues that

16    trial counsel's failure to challenge the adequacy of the evidence of overt acts relates back to

17    petitioner's original claims challenging his conviction on the conspiracy charge.

18    Petitioner asserts that the operative facts of his new Claim 12, alleging cumulative

19    error, relate back because the previously listed errors all relate back to his original claims.

20    2.  Claims That Relate Back to the Timely Claims of Other Petitioners

21    Petitioner argues that Rule 15(c) permits the amended claims of one

22    "petitioner/plaintiff" to relate back to the claims of a "co-defendant and related

23    petitioner/plaintiff."  Petitioner contends that the advisory committee notes to the 1966

24    amendments to Rule 15(c) "strongly suggest" that amended claims may relate back to the claims

25    of other parties.

26    /////

Petitioner relies in part on the court's December 24, 1997 order relating the cases of petitioners Fenenbock, Hamby, and Frazier and stating that the three actions are based on the same or similar claims, the same property, transaction or event, similar questions of fact, and the same question of law, as well as the court's December 12, 2001 order relating the cases of petitioners Bond and MacCarlie to the cases of petitioners Hamby, Fenenbock, and Frazier and stating that the five actions involve the same or similar claims, the same events, similar questions of fact, and some of the same questions of law.

On the basis of the advisory committee notes to Rule 15(c), the court's related case orders, and citations to a treatise and a case concerning the existence and involvement of a new plaintiff, petitioner asserts that his new Claim 1 relates back to the facts included in petitioner Fenenbock's original Claim 4; his new Claim 2 relates back to the facts included in petitioner Fenenbock's original Claim 5; most of his new Claim 6 relates back to facts included in petitioner Fenenbock's original Claims 4 and 7; portions of his new Claim 8, and "specifically subsections 1, 5, 5, and 9" [sic], relate back to facts included in petitioner Fenenbock's original Claims 4 and 7; and his new Claim 12, alleging cumulative error, relates back to the facts alleged in petitioner Fenenbock's original Claims 4, 5, and 7.  In addition, petitioner asserts that his new Claims 1, 2, 5, 6, and 12, as well as portions of Claim 8, relate back to the claim of actual innocence raised by petitioner Fenenbock presented under the title "Notice of Attention."

3.  Other Claims

Petitioner does not argue that his new Claims 3 and 11 or some portions of his new Claims 6 and 8 relate back to any claims alleged in his own original petition or to any claims alleged by other petitioners in their original petitions.

/////

/////

/////

/////

B.  Application of § 2244(d)(1)(D)[1]

Petitioner argues that the statute of limitations did not begin to run on September 28, 1999, for his new Claims 1, 3, 5, 6, and 8.  Petitioner joins in specific arguments raised by petitioner Frazier and in unspecified arguments anticipated to be presented by petitioner Fenenbock.  In this regard, petitioner states that when counsel was appointed in this case at the end of January 2000, counsel for petitioners Frazier, Fenenbock, and Hamby had been reviewing the record and investigating new claims for two years.  Counsel for petitioner states that she relied largely on the investigation of counsel for the related petitioners to discover the factual predicates for some of the claims alleged in petitioner's amended petition.  Petitioner's counsel has not offered a declaration stating specific dates on which those factual predicates were discovered.

1.  Claim 1

Petitioner asserts that trial counsel did not challenge the planting of false memories in the child witness Randy Hogrefe by any pretrial motion, did not raise the issue, and did not investigate it.  Petitioner's habeas counsel states that she, and subsequently her client, first learned of the official collusion that produced false memories and evidence when she was advised by counsel for petitioners Frazier and Fenenbock of their extensive investigation and research and the expert declaration they obtained concerning the planting of false memories by authorities.  Petitioner's counsel states that she received "all of the applicable information" in about November 2001, when petitioners Hamby, Fenenbock, and Frazier filed their state exhaustion petitions.

2.  Claim 3

Petitioner asserts that he was unaware of his trial counsel's decision not to challenge the scripted introduction that admitted elements of the offense because counsel waived

_____

[1]  Petitioner's citation to § 2244(d)(1)(B) appears to be a typographical error.

his client's appearance during the proceedings in which the scripted introduction was presented to the jury.  Petitioner asserts that appellate counsel did not raise this issue on appeal, although it was in the record.  Petitioner's habeas counsel states that she discovered the issue only after completing her review of the entire trial transcript and record of pre-trial proceedings and after discussing the issue with counsel for the other petitioners.

### 3.  Claim 5

Petitioner asserts that he was not aware and could not have been aware of the coercive, dishonest, and unfair investigative techniques which were employed by the government and law enforcement to procure false testimony and deprive him of a fair trial because neither his trial counsel nor appellate counsel challenged the techniques or preserved the issue.  Petitioner's habeas counsel states that she discovered the claim after a thorough review of the record, including contradictory statements made by witnesses at successive trials, and after she received information from other habeas counsel.  Petitioner argues that factual support for the claim was not available until counsel for the other petitioners interviewed prosecution witnesses and developed information about Randy Hogrefe's false memory in "about 2001."

### 4.  Claim 6

Petitioner concedes that some of the prosecutorial misconduct alleged in Claim 6 was engaged in at his trial at which he was present, but he contends that the significance of the prosecutor's knowingly presenting false evidence, especially through Officer Kartchner, was not developed by his trial counsel and was not evident until habeas counsel for petitioners Fenenbock, Hamby, and Frazier procured media records that contradicted Kartchner and then further developed the issue.  Petitioner's habeas counsel believes she received the pertinent information with respect to this claim in "about fall of 2001."

/////

/////

/////

5.  Claim 8(c), (e), and (I)

Petitioner states that the ineffectiveness of trial counsel with regard to the scripted introduction, Officer Kartchner's bad faith, and police misconduct were discovered as noted in his arguments concerning Claims 1, 3, 5, and 6.

C.  Equitable Tolling

Petitioner argues that equitable tolling should be applied to the entire period between the filing of his original federal petition on October 29, 1999, and the filing of his amended federal petition on September 2, 2003, because "there are combinations of specific extraordinary circumstances which require equitable tolling in this case."  Petitioner suggests that even if each set of circumstances is not sufficient to warrant tolling, all of the circumstances when considered together made it impossible for him to file all of his claims prior to the expiration of the statute of limitations.  Petitioner also joins in any equitable tolling arguments raised by the related petitioners.

Petitioner cites the extraordinary and unusual complexity of the cases, respondents' lack of objection to continuances requested by petitioners' counsel during most of the pendency of this action, and the necessity of filing an exhaustion petition.

With regard to complexity, petitioner argues that the three separate trials in state court, multiplicity of defendants, two years of pretrial proceedings, and a record exceeding 30,000 pages made identification of issues and their sufficient development extremely difficult. Petitioner's counsel states that she did not obtain the trial transcript for petitioner Bond's trial until April 2000 and that she reviewed portions of the record of the other two trials and pertinent parts of nearly 10,000 pages of discovery at the Office of the Federal Defender in Sacramento. Counsel explains that the petitioners conserved resources by relying on the investigation and declarations obtained by counsel for other petitioners and that most of the investigation was not completed until shortly before the state exhaustion petitions were filed by petitioners Hamby, Fenenbock, and Frazier in November 2001.

With regard to respondents' lack of objection to continuances, petitioner asserts that respondents stipulated to continuances in the Hamby, Fenenbock, and Frazier cases from 1997 to October 2001 and that petitioner Bond requested and was granted continuances without objection by respondents from the end of January 2000, when habeas counsel was appointed, to October 2001. Petitioner argues that, after four years of stipulating to continuances with the express knowledge that the continuances were sought for the purpose of discovering and developing new facts and legal claims not raised in the initial pro se petitions, respondents should be estopped from maintaining that petitioners' amended petitions are untimely. Petitioner's counsel claims that, had she been on notice that respondents would assert the statute of limitations defense to bar new claims, she "may have been able to notify respondent earlier of potential claims under investigation." On the premise that the purpose of the statute of limitations is to protect the state from stale claims being presented by petitioners who have slept on their rights, petitioner argues that equity should preclude respondents in these cases from asserting the statute as a bar to the petitioners' new claims.

With regard to the necessity of filing a state exhaustion petition, petitioner argues that he had to prepare and file a state petition that afforded the state a full and fair opportunity to address and resolve the new claims on their merits and that the pleading had to comply with state law, which requires facts and supporting evidence sufficient to make a prima facie case of a constitutional violation. Petitioner asserts that he was unable to discover and develop his new claims until after the statute of limitations expired, that the exhaustion petitions filed by petitioners Hamby, Fenenbock, and Frazier on November 26, 2001, put respondents on notice of all of petitioner's new claims except his claims of ineffective assistance of counsel and actual innocence, and that petitioner Bond filed his own exhaustion petition on August 20, 2002.

Petitioner argues in conclusion that equitable tolling should be granted where the petitioner has not slept on his rights and the respondents received sufficient notice so that they are not required to defend against stale claims. Petitioner notes that no evidence has been lost, as

1  respondents agreed with petitioners to maintain the records and evidence necessary to litigate

2  petitioners' claims on their merits.  Petitioner also contends that respondents have already

3  responded on the merits to most of petitioner's new claims because respondents filed briefs in

4  opposition to the state habeas petitions of petitioners Hamby, Fenenbock, and Frazier.

5      D. <u>Actual Innocence</u>

6         Petitioner's final argument is that the actual innocence exception is applicable to

7  him and tolls the statute of limitations rendering his amended petition timely.  Petitioner does not

8  dispute respondents' contention that there is no definitive decision from the Ninth Circuit or the

9  Supreme Court whether there is an actual innocence exception to the AEDPA statute of

10  limitations.  Rather, petitioner argues that logic, justice and the United States Constitution

11  compel a conclusion that the State has no legitimate interest in imprisoning a person who is

12  actually innocent and therefore an actual innocence exception must be recognized.

13         Petitioner asserts that he meets the gateway standard of <u>Schlup v. Delos</u>, 513 U.S.

14  298, 326-27 (1995), and that this court can therefore consider all claims raised in his amended

15  petition.  In response to respondents' attack on the sufficiency of petitioner's evidence of actual

16  innocence, petitioner refers to petitioner MacCarlie's trial testimony that he acted alone, that no

17  one planned to kill the victim, and that he never communicated to anybody else he was going to

18  kill the victim.  Petitioner argues that there is no evidence that he himself ever said or planned

19  that the victim should or would be killed.  In addition, petitioner cites prosecution witness

20  Michael Sutton's statements to an investigator that there was no conspiracy to kill the victim and

21  that it just happened on the spur of the moment.  Petitioner argues that a court could not have

22  confidence in the outcome of petitioner's trial on the basis of this evidence or, at a minimum,

23  petitioner is entitled to an evidentiary hearing to show that he meets the <u>Schlup</u> gateway standard.

24  III. <u>Respondents' Reply</u>

25         Respondents assert that petitioner's arguments are misplaced and the motion to

26  dismiss should be granted.

A.  <u>Relation Back</u>

Respondents argue that petitioner cites no authority, other than a single Federal Tort Claims Act case that is readily distinguished, for the sweeping proposition that respondents had notice of some of petitioner's new claims because similar claims were raised by separately tried co-defendants in their own state appeals and federal habeas petitions.  Respondents assert that the plain language of Rule 15(c) contemplates relation back to the "conduct, transaction, or occurrence set forth or attempted to be set forth in the <u>original pleading</u>," not to a different pleading filed by a co-defendant.  Respondents argue that petitioner's reading of the rule would not ensure effective notice to the state and would thwart the policy behind the AEDPA statute of limitations.

Respondents contend that petitioner's reliance on the court's related case orders is misplaced because the findings in those orders were made pursuant to Local Rule 83-123(a), which states that, for purposes of judicial economy, an action is "related" to another action and both will be assigned to the same judge if "(1) both actions involve the same parties and are based on the same or a similar claim; [and] (2) both actions involve the same property, transaction, or event."  Respondents argue that nothing in this rule suggests that the determination of whether cases should be assigned to the same judge is based on the same considerations that lie behind Rule 15(c) and further that logic does not compel such a conclusion from two rules with such disparate concerns.

Respondents argue that petitioner misconstrues the Supreme Court's language in <u>Mayle</u> concerning the necessity of a common core of operative facts to justify application of the "relation back" doctrine.  Respondents reject petitioner's contention that his original claim of insufficient evidence to support his conviction of conspiracy to commit murder served to put the state on notice that petitioner might claim that Randy Hogrefe's testimony was coerced, that the defense was denied access to Hogrefe, that the prosecutor committed misconduct, or that trial counsel was ineffective.  Respondents describe petitioner's analysis as a thinly veiled

1   repackaging of the approach that was taken by the Ninth Circuit in Felix v. Mayle and expressly

2   rejected by the Supreme Court.  In this regard, respondents also assert that petitioner's analysis is

3   flawed because petitioner assumes that "notice" remains the touchstone of whether a claim

4   relates back, when such an assumption does not appear to be viable in light of the Supreme

5   Court's ruling that, for purpose of a habeas action, "the 'original pleading' to which Rule 15

6   refers is . . . the petition in a habeas proceeding."   Mayle v. Felix, 545 U.S. 644, 125 S. Ct. at

7   2569-70.  Respondents note that the Supreme Court held that, "[s]o long as the original and

8   amended petitions state claims that are tied to a common core of operative facts, relation back

9   will be in order." Id. at 2574.

10          Respondents dispute petitioner's contention that some of his new claims relate

11  back to his own original claims, in which he alleged due process violations arising from (1)

12  insufficient evidence of the essential elements of agreement and intent to kill to support a guilty

13  verdict of conspiracy to commit murder and (2) trial court error in failing to instruct the jury that

14  a conviction of conspiracy to commit murder requires proof that the defendant intended to kill

15  the victim.  Respondents assert that the core of operative facts for the instructional error claim is

16  comprised of the facts needed to determine whether the trial court correctly applied and

17  instructed the jury in California law on conspiracy to commit murder, while the core of operative

18  facts for the sufficiency of the evidence claim is comprised of the facts needed to determine

19  whether all of the evidence, reviewed in a light most favorable to the prosecution, could lead no

20  rational trier of fact to find, beyond a reasonable doubt, that petitioner conspired to commit

21  murder.

22          Respondents contend that petitioner's new Claim 1–alleging that the trial court

23  violated his rights to due process, a fair trial, to present a defense, and to confront witnesses by

24  permitting the prosecution to use testimony based on a false memory created by police, social

25  worker, and prosecutor manipulation, coercion, and coaching–does not share a common core of

26  operative facts with the original claims because neither of the original claims involves facts

1  concerning the credibility of witnesses or the prosecution's alleged knowing presentation of false

2  material testimony through the manipulation, coercion, and coaching of Randy Hogrefe.

3       Respondents contend that petitioner's new Claim 2– alleging violations of his

4  rights to a fair trial and to present a defense by denial of access to the key prosecution

5  witness–does not share a common core of operative facts with the original claims because neither

6  of the original claims involves facts concerning the actions of the prosecution and others, assisted

7  by the trial court, that kept defense counsel and their agents from having access to Randy

8  Hogrefe prior to his testimony at trial.

9       Respondents contend that petitioner's new Claim 4–alleging violations of due

10  process and the prohibition against cruel and unusual punishment based on petitioner's actual

11  innocence of conspiracy to commit murder–does not share a common core of operative facts with

12  the original claims because those original claims rely on evidence that was part of the record

13  rather than on evidence that was not presented at trial.  Respondents also assert that petitioner's

14  new claim is one of legal rather than factual innocence.

15       Respondents contend that petitioner's new Claim 5–alleging denial of due process

16  through the use of unfair governmental investigative techniques that made it possible to present

17  false and misleading evidence at trial and impossible to present an adequate defense–does not

18  share a common core of operative facts with the original claims because neither of the original

19  claims is based on facts involving the actions of law enforcement personnel while investigating

20  and helping prepare the prosecution's case.

21       Respondents contend that petitioner's new Claim 6–alleging violations of his

22  rights to a fair trial and to confrontation by repeated prosecutorial misconduct–does not share a

23  common core of operative facts with the original claims because neither of the original claims is

24  based on facts involving the actions of the prosecutor, Officer Kartchner, other law enforcement

25  personnel, and others during the investigation and throughout the course of the trials.

26  /////

1    With regard to petitioner's argument that four parts of his new Claim 8–alleging

2  ineffective assistance of counsel–relate back to his original claims, respondents contend that the

3  specified parts of Claim 8 do not share a common core of operative facts with the original claims

4  because neither of the original claims involves facts concerning counsel's failure to obtain or

5  present expert testimony regarding eyewitnesses and memory, counsel's failure to attack the

6  adequacy of the overt acts charged as not independent of the conspiracy agreement, or counsel's

7  failure to object to or make a record of police misconduct.  Respondents argue in addition that,

8  aside from the differences between the factual predicates for the old and new claims, a claim of

9  ineffective assistance of counsel must satisfy the elements of Strickland v. Washington and those

10  elements differ significantly from the elements of proof applicable to the substantive predicates.

11    Respondents do not discuss petitioner's contention that his new Claims 7 and 12

12  relate back to the original claims.

13    B.  Delayed Discovery of Claims

14    Turning to petitioner Bond's argument that he could not have discovered the

15  factual predicate of some of his claims any earlier through the exercise of due diligence, thereby

16  triggering a later start date for the limitations period, respondents note that petitioner has cited

17  petitioner Frazier's opposition to respondents' motion to dismiss.  Respondents argue that

18  petitioner Frazier has conceded that she was aware of at least some of the facts underlying nine of

19  her new claims at the time of trial and that the factual predicates of four of those claims were

20  addressed by the California Court of Appeal in its 1996 opinion.  Respondents assert that

21  petitioner Frazier has invoked § 2244(d)(1)(D) on the grounds that she was unable to locate and

22  interview witnesses with relevant information until 2000, 2001, or 2003, did not have a "full

23  understanding of the facts" until the fall of 2001, and the "full extent" of the claims emerged only

24  upon review of other trial transcripts.

25    Respondents argue that the factual predicate of a claim is discovered for purposes

26  of § 2244(d)(1)(D) when the petitioner has knowledge of the facts supporting the claim, not

1  when the petitioner has evidentiary support for it.  Respondents contend that petitioner Bond,

2  who asserts his reliance on the investigations of other counsel, must concede that many, if not all,

3  of his new claims pertain to trial events that he knew about as of December 16, 1994.

4  Respondents note, for example, that petitioner Bond's claim of actual innocence is based on the

5  testimony of Bernard MacCarlie, the co-defendant with whom Bond was tried, and Bond was

6  present when MacCarlie testified.  Respondents dispute petitioner Frazier's argument that it was

7  necessary to locate certain witnesses in order to develop claims that were known at the time of

8  trial.  Respondents argue that such claims could have been investigated by petitioner Bond earlier

9  because he was aware of all of the witnesses cited by petitioner Frazier:  Lockley, Dodds, and

10  Knapp were all charged as co-defendants, and Randy Hogrefe, Michael Roanhouse, and Michael

11  Sutton testified at petitioner's trial.  Respondents point to petitioners' failure to offer evidence

12  that these six witnesses were unavailable between the conclusion of state court proceedings in

13  1996 and the date they were interviewed four to seven years later, as well as petitioners' failure

14  to offer declarations by any of these witnesses other than the declaration of Dodds signed in

15  2002.

16        Respondents argue that petitioner Bond's new Claims 1, 3, 5, 6 and specified

17  portions of 8 all concern acts or omissions that took place at trial, that petitioner's lack of legal

18  training did not prevent him from discovering the factual predicates for these claims at an earlier

19  time, and that the ineffective assistance of appellate counsel does not toll the AEDPA statute of

20  limitations.  Respondents conclude that the statute commenced from the date petitioner knew or

21  should have known the relevant facts and that none of petitioner's new claims qualify for an

22  extended deadline under § 2244(d)(1)(D).

23        C.  Equitable Tolling

24        In response to petitioner's contention that equitable tolling should be applied,

25  respondents assert that the Supreme Court allowed such tolling in the non-AEDPA case cited by

26  petitioner on the basis of considerations related to venue, misfiled pleadings, and national

uniformity, considerations that are not applicable here.  Respondents argue that it is well

established in the Ninth Circuit that the test for equitable tolling of the AEDPA statute of

limitations is whether extraordinary circumstances beyond the petitioner's control made it

impossible for him to timely file his petition.  Respondents agree that petitioner's case is

complex but are unaware of any habeas case in which the statute of limitations has been tolled

because the issues presented are difficult.  Respondents observe that Congress was aware when it

enacted the one-year statute of limitations that some petitions would involve complex claims and

nonetheless provided merely a six-month limitation period in capital cases.  Respondents

acknowledge that they stipulated to continuances of status conferences but assert that they did not

agree at any time to waive the statute of limitations.  Respondents state that none of the

stipulations mentioned the limitations period and respondents' mere acquiescence in petitioners'

requests for continuances cannot constitute an express waiver.  Respondents also argue that there

are no other factors in this case that could reasonably have been relied upon by petitioners or

their counsel as a basis for assuming that respondents were agreeing to waive the limitations

period.  Respondents add that they had no duty to research petitioner Bond's case and notify his

counsel of the filing deadline, that the statute of limitations had already expired prior to any of

the stipulations, that the stipulations continuing status conferences could not revive and extend

the limitations period, and that petitioner's counsel could and should have developed the new

claims earlier.  Respondents conclude that petitioner has failed to meet the very high threshold

necessary to trigger equitable tolling.

D.  Actual Innocence

With regard to petitioner's arguments concerning actual innocence, respondents

argue that if there is an actual innocence exception to the AEDPA statute of limitations, Schlup

requires the petitioner to support the claim of actual innocence with "new reliable evidence –

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence – that was not presented at trial" and to establish that "it is more likely than not

1    that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." 513

2    U.S. at 324, 327.  Respondents assert that a court reviewing such a claim is entitled to consider

3    "how the timing of the submission and the likely credibility of the affiants bear on the probable

4    reliability of that evidence."  Id. at 332.

5           Respondents argue that the MacCarlie testimony and Sutton statements relied

6    upon by petitioner do not meet the Schlup standard.  Respondents dispute petitioner's

7    characterization of MacCarlie's testimony as a "confession" that he acted alone, that no one

8    planned to kill the victim, and that he never communicated to anyone else an intention to kill the

9    victim.  Respondents assert that MacCarlie gave a bizarre hallucinatory account of the events

10   surrounding the killing and testified that he did not see others there but did not state that he was

11   the sole assailant and did not exculpate other co-defendants.  Respondents point to the testimony

12   of the defense experts whose opinion was that MacCarlie suffered from blackouts and PTSD,

13   which could cause a dissociative state or flashbacks where the subject is unable to distinguish

14   reality.  Thus, respondents reason, MacCarlie's testimony fails to establish petitioner's actual

15   innocence because the evidence does not qualify as a trustworthy eyewitness account that shows

16   it is more likely than not that no reasonable juror would have found petitioner guilty beyond a

17   reasonable doubt.

18          Respondents contend that the pretrial statement allegedly made by Michael Sutton

19   also fails to establish petitioner's actual innocence.  Respondents assert that Sutton's alleged

20   statements to a defense investigator in November 1993 that there was "no big conspiracy" to kill

21   the victim and that it "apparently" happened "during the heat of the moment" were made in the

22   context of his description of a conversation that involved Adcock, Hamby, and some other

23   women.  Respondents argue that these statements apply only to Adcock and Hamby, while other

24   statements by Sutton describe Bond and MacCarlie agreeing to get in MacCarlie's truck and "go

25   get" the victim and then racing up the hill to where the victim was.  Respondents note that this

26   issue was raised during the Hamby-Fenenbock-Frazier joint trial, which preceded petitioner

1   Bond's trial, and the trial court sustained the prosecutor's objection and excluded Sutton's

2   testimony about the incident happening during the heat of the moment because it amounted to

3   nothing more than Sutton's opinion.  Respondents argue that such evidence is not reliable and, if

4   petitioner intends to rely on other information obtained from Sutton after trial, he should have

5   submitted a declaration signed by Sutton.  Respondents note that none of the petitioners has

6   presented such a declaration, despite the fact that petitioner Frazier asserts in her opposition that

7   Sutton was interviewed on August 26, 2003.  Respondents cite the Supreme Court's observation

8   in Herrera v. Collins, 506 U.S. 390, 417 (1993), that affidavits signed long after trial or based on

9   hearsay are "particularly suspect" and observe that in this case the petitioners have not provided

10  even a suspect affidavit for the court's consideration.

11          Respondents conclude that petitioner cannot show that it is more likely than not

12  that no reasonable juror would have found him guilty beyond a reasonable doubt and that no

13  evidentiary hearing is required because the proffered evidence does not come close to qualifying

14  as a gateway to overcome the statute of limitations.

15                                        ANALYSIS

16          In findings and recommendations filed in the five related cases on August 11,

17  2004, the undersigned recommended that respondents' first motions to dismiss be denied

18  pursuant to Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004).  Because the Felix decision was issued

19  on August 9, 2004, the undersigned recognized that renewed motions to dismiss might be

20  appropriate at a later time and therefore recommended that the motions to dismiss be denied

21  without prejudice.  (See Findings and Recommendations filed Aug. 11, 2004, at 16.)  The

22  findings and recommendations were adopted in full, and respondents' motions were denied

23  without prejudice on September 30, 2004.

24          By order filed February 8, 2005, the undersigned directed the respondents to

25  respond to the amended petitions by answer or motion to dismiss.  (See Order filed Feb. 8, 2005,

26  at 3.)  Taking into consideration the fact that the Supreme Court had granted certiorari in Mayle

1    v. Felix, the undersigned granted respondents six months to file and serve their responses.  On

2    June 23, 2005, the Supreme Court reversed the Ninth Circuit's decision in Felix.  Mayle v. Felix,

3    545 U.S. 644, 125 S. Ct. 2562 (2005).  Respondents have properly renewed their motions to

4    dismiss the amended petitions as containing claims that are untimely.  Arguments unrelated to

5    the timeliness of petitioners' claims will not be considered by the court at this time and should be

6    raised in answers responsive to the claims that are found to be timely presented.

7    I.  The Statute of Limitations

8          On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA")

9    was enacted.  The AEDPA amended 28 U.S.C. § 2244 by adding the following provision:

10            (d) (1)  A 1-year period of limitation shall apply to an application
        for a writ of habeas corpus by a person in custody pursuant to the
11        judgment of a State court.  The limitation period shall run from the
        latest of –
12
            (A) the date on which the judgment became final by the
13        conclusion of direct review or the expiration of the time for
        seeking such review;
14
            (B) the date on which the impediment to filing an
15        application created by State action in violation of the Constitution
        or laws of the United States is removed, if the applicant was
16        prevented from filing by such State action;

17            (C) the date on which the constitutional right asserted was
        initially recognized by the Supreme Court, if the right has been
18        newly recognized by the Supreme Court and made retroactively
        applicable to cases on collateral review; or
19
            (D) the date on which the factual predicate of the claim or
20        claims presented could have been discovered through the exercise
        of due diligence.
21
            (2) The time during which a properly filed application for State
22        post-conviction or other collateral review with respect to the
        pertinent judgment or claim is pending shall not be counted toward
23        any period of limitation under this subsection.

24    28 U.S.C. § 2244(d).  The one-year AEDPA statute of limitations applies to all federal habeas

25    corpus petitions filed after the statute was enacted and therefore applies to the present case,

26    which was filed after April 24, 1996.  See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).

1   A.  Application of § 2244(d)(1)(A)

2        For purposes of 28 U.S.C. § 2244(d)(1)(A), petitioner Bond's judgment became

3   final on September 28, 1999, ninety days after the California Supreme Court denied review on

4   appeal.  See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999).  The one-year period of

5   limitation began to run on September 29, 1999.  Petitioner Bond did not file any state petitions

6   for collateral relief in the year following September 28, 1999.  Accordingly, the one-year period

7   of limitation ran without interruption until it expired on September 28, 2000.

8        It is undisputed that the pro se federal habeas petition received from petitioner

9   Bond on October 29, 1999, was timely filed.  Petitioner's amended petition was filed by counsel

10  on September 2, 2003, almost three years after the statute of limitations expired.  The ten new

11  claims alleged in the amended petition are barred by the AEDPA statute of limitations unless

12  some other statutory provision applies or the claims are rendered timely under some applicable

13  rule or doctrine.

14   B.  Application of § 2244(d)(1)(D)

15        Pursuant to § 2244(d)(1)(D), the one-year period of limitation will run from "the

16  date on which the factual predicate of the claim or claims presented could have been discovered

17  through the exercise of due diligence," if that date is later than the date on which the petitioner's

18  judgment became final.  The language of § 2244(d)(1)(D) requires the court to determine the date

19  on which the petitioner "could have discovered the factual predicate" of his claim, not the date on

20  which the petitioner understood the legal significance of the facts known to him or the date on

21  which he obtained evidence to support his claim.  Hasan v. Galaza, 254 F.3d 1150, 1154 & n.3

22  (9th Cir. 2001) (holding that the due diligence clock started ticking when the prisoner learned

23  facts that supported a good faith basis for arguing prejudice arising from ineffective assistance of

24  counsel, whether or not the prisoner understood the legal significance of the facts known to him);

25  Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("Time begins when the prisoner knows (or

26  through diligence could discover) the important facts, not when the prisoner recognizes their

27

1   legal significance."); <u>Flanagan v. Johnson</u>, 154 F.3d 196, 199 (5th Cir. 1998) ("Section

2   2244(d)(1)(D) does not convey a statutory right to an extended delay . . . while a habeas

3   petitioner gathers every possible scrap of evidence that might, by negative implication, support

4   his claim.").

5          Petitioner Bond contends that the statute of limitations did not begin to run on

6   September 28, 1999, for Claims 1, 3, 5, 6, and 8 in his amended petition.  He asserts that counsel

7   received "all the applicable information" for Claim 1 in "about November 2001," that counsel

8   discovered the issue alleged in Claim 3 on the unspecified date on which she completed her

9   review of the entire record and discussed the issue with counsel for other petitioners, that counsel

10  discovered the issue alleged in Claim 5 after a thorough review of the record and the receipt of

11  factual support for the claim in "about 2001," that some of the misconduct alleged in Claim 6

12  was present at trial but counsel did not discover the significance of it and receive information

13  about it from other counsel until "about fall of 2001," and that some of the ineffective assistance

14  of counsel alleged in Claim 8 was discovered in connection with the discovery of information

15  supporting Claims 1, 3, 5, and 6.

16         While the statute of limitations may not have begun to run on September 28,

17  1999, for all of petitioner's claims, petitioner's vague and conclusory assertions, unsupported by

18  appropriate declarations and other evidence, fail to establish specific dates on which the factual

19  predicates of Claims 1, 3, 5, 6, and 8 "could have been discovered through the exercise of due

20  diligence."  The vague dates cited by petitioner appear to be the dates on which or by which

21  petitioner received all the information and evidence applicable to Claims 1, 3, 5, 6, and 8.  Thus,

22  petitioner's arguments establish, at most, the approximate time by which petitioner had collected

23  the evidence needed to support the claims.  As such, the approximate dates provided by

24  petitioner's counsel are irrelevant to the application of § 2244(d)(1)(D).

25         Put another way, petitioner has not shown that he did not and could not have

26  discovered the factual predicates for Claims 1, 3, 5, 6, and 8 before August 20, 2001, i.e., one

1   year prior to the filing of his state exhaustion petition on August 20, 2002.  If the factual

2   predicates for Claims 1, 3, 5, 6, and 8 could have been or were discovered prior to August 20,

3   2001, the one-year period of limitation expired for those claims before petitioner filed his state

4   habeas petition and long before the claims were presented to this court.  Counsel was appointed

5   for petitioner on December 30, 1999.  Current counsel substituted in on January 24, 2000, and, as

6   counsel herself has noted, immediately enjoyed the benefits of two years of investigation and

7   research undertaken by counsel for petitioners Hamby, Fenenbock, and Frazier.  Petitioner has

8   not shown that she could not have discovered the factual predicates for Claims 1, 3, 5, 6, and 8

9   prior to August 20, 2001.  Petitioner has therefore failed to demonstrate that any claims in his

10  amended petition were timely filed by application of  § 2244(d)(1)(D).

11  II.  Relation Back of New Claims

12          An application for a writ of habeas corpus "may be amended or supplemented as

13  provided in the rules of civil procedure applicable to civil actions."  28 U.S.C. § 2242.  See also

14  Rule 11, Fed. R. Governing § 2254 Cases (providing that the Federal Rules of Civil Procedure

15  may be applied in habeas corpus proceedings to the extent that the rules of civil procedure are not

16  inconsistent with any statutory provision or with the rules governing habeas cases); Fed. R. Civ.

17  P. 81(a)(2) (providing that the Federal Rules of Civil Procedure are applicable to proceedings for

18  habeas corpus "to the extent that the practice in such proceedings is not set forth in statutes of the

19  United States, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255

20  Proceedings").

21          Under Federal Rule of Civil Procedure 15(a), a habeas petitioner may amend his

22  pleadings once as a matter of course before a responsive pleading is served and may seek leave of

23  court to amend his pleading at any time during the proceeding.  Mayle v. Felix, 545 U.S. 644,

24  ___, 125 S. Ct. 2562, 2569 (2005).  Under Rule 15(c), a petitioner's amendments made after the

25  statute of limitations has run will relate back to the date of his original pleading if the new claims

26  /////

1   arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

2   original pleading.  Id. (citing Fed. R. Civ. P. 15(c)(2)).

3          In Mayle v. Felix, the Supreme Court explained that "[t]he 'original pleading' to

4   which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas

5   proceeding."  Id. at 2569-70.  The Court observed that the complaint in an ordinary civil case

6   need only provide fair notice of the plaintiff's claim and the grounds on which the claim rests,

7   while a habeas petition is required to specify all grounds for relief available to the petitioner and

8   state the facts supporting each ground.  Id. at 2570.  Because of this difference between civil

9   complaints and habeas petitions, the relation back of new habeas claims "depends on the

10  existence of a common 'core of operative facts' uniting the original and newly asserted claims."

11  Id. at 2572.[2]  The common core of operative facts must not be viewed at too high a level of

12  generality, and an "occurrence" will consist of each separate set of facts that supports a ground

13  for relief.  Id. at 2573.  See also United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) ("[A]

14  petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of

15  ineffective assistance in the original petition, and then amending the petition to assert another

16  ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."), cert.

17  denied ___U.S.___, 126 S. Ct. 2906 (2006).  Applying these principles in Mayle, the Court ruled

18  that the petitioner's new claim did not relate back to his original claim because the new claim

19  arose from the petitioner's own pretrial interrogation and was different in time and place from his

20  original claim, which arose from the pretrial police interrogation of a witness.  Id. at 2572-73.

21         Neither the Supreme Court's analysis in Mayle nor the language of Rule 15

22  supports a conclusion that a new claim raised by a party in his amended pleading can relate back

23  to a claim raised by another party in a separate pleading in the same action, much less to a claim

24

25         [2]  See Jackson v. Roe, 425 F.3d 654, 660 n. 8 (9th Cir. 2005) ("Instead, held the Court, an
    amended claim in a habeas petition relates back for statute of limitations purposes only if it shares
    a 'common core of operative facts' with the original claim.) (quoting Mayle v. Felix, 125 S. Ct. at
26  2574).

raised by another party in a pleading in another action.  Rule 15(a) speaks repeatedly of "*a party*" amending "*the party's pleading,*" and Rule 15(c) provides that "[a]n amendment of *a pleading* relates back to the date of *the original pleading* when . . . the claim or defense asserted in *the amended pleading* arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in *the original pleading.*"  Fed. R. Civ. P. 15(a) and (c) (emphasis added).  Thus, in determining relation back pursuant to Rule 15(c), the only relevant pleadings are the party's original pleading and that same party's amended pleading.

While Rule 15(c) provides for relation back in three different circumstances, only one of the three provisions is applicable to habeas proceedings.  The rule, omitting only the provisions concerning service of the United States or any agency or officer thereof for purposes of Rule 15(c)(3), provides as follows:

> **(c)  Relation Back of Amendments.**  An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. . . .

Fed. R. Civ. P. 15(c) (as last amended in 1993).

Rule 15(c)(1) does not apply to habeas proceedings because 28 U.S.C. § 2244(d), i.e., "the law that provides the statute of limitations applicable to the action," does not include a provision permitting relation back.

/////

Rule 15(c)(2) is the provision applied to habeas proceedings by the Supreme Court in <u>Mayle</u>.  125 S. Ct. at 2566 ("This case involves two federal prescriptions:  the one-year limitation period imposed on federal habeas corpus petitioners by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1); and the rule that pleading amendments relate back to the filing date of the original pleading when both the original plea and the amendment arise out of the same 'conduct, transaction, or occurrence,' Fed. Rule Civ. Proc. 15(c)(2).").

Rule 15(c)(3), which concerns amendments that change the party against whom a claim is asserted, is not applicable to habeas proceedings because there is only one possible petitioner and there are habeas statutes and rules that govern the naming of the proper respondent and the service of respondents.  <u>Compare</u> Fed. R. Civ. P. 15(c)(3) <u>and</u> Fed. R. Civ. P. 4(m) <u>with</u> Rule 2(a), Fed. R. Governing § 2254 Cases (requiring a petitioner currently in custody under a state-court judgment to name as respondent the state officer who has custody of him) <u>and</u> Rule 4, Fed. R. Governing § 2254 Cases (stating requirements for service of habeas petition and order).  <u>See</u> Rule 11, Fed. R. Governing § 2254 Cases; Fed. R. Civ. P. 81(a)(2).

Petitioners' reliance on the Advisory Committee Notes to the 1966 amendment to Rule 15(c) is misplaced because, according to those very notes, the 1966 amendment amplified the rule "to state more clearly when an amendment of a pleading changing the party against whom a claim is asserted (including an amendment to correct a misnomer or misdescription of a defendant) shall 'relate back' to the date of the original pleading" and in particular addressed a problem that arose "in certain actions by private parties against officers or agencies of the United States."  The 1966 amendment concerned only Rule 15(c)(3), which is not applicable to habeas petitions, and the advisory committee notes addressed only the amendment of a pleading to change the party against whom a claim or defense is asserted.  The notes do not support a conclusion that a habeas petitioner's new claims can relate back to the date of a pleading filed by another habeas petitioner in a separate habeas proceeding.  In particular, the final paragraph of

those notes, referring to "[t]he relation back of amendments changing plaintiffs," is irrelevant in habeas proceedings in which the only possible "plaintiff" is the state prisoner who is challenging his state court conviction or sentence. The undersigned rejects petitioners' argument that any of their new claims relate back to claims raised by the other petitioners in their separate cases.

Petitioners' reliance on orders relating their cases is also misplaced. Under the Local Rules of Practice for the United States District Court for the Eastern District of California, the court may assign two or more cases to the same district judge or magistrate judge, or both, when doing so will "effect a substantial savings of judicial effort" and avoid a "substantial duplication of labor." Local Rule 83-123(a). As stated in the court's standard order relating cases pursuant to this rule, no consolidation of the cases is effected by their assignment to the same judge or judges,[3] and each case proceeds as a separate case. The relating of cases for purposes of judicial economy has no bearing on the relation back of new claims alleged in a party's amended pleadings pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.

The court turns to a comparison of the claims raised in petitioner Bond's original petition and those raised in his amended petition. The claims alleged in the original petition are as follows:

> Ground one: Petitioner's conviction of conspiracy to commit murder is supported by insufficient evidence of the essential elements of agreement and intent to kill, in violation of petitioner's constitutional due process right not to be convicted except upon proof beyond a reasonable doubt of every element of the crime;

/////

---

[3]   The related case order filed in the Hamby, Fenenbock, and Frazier cases in 1997 specifically stated that "[t]he parties should be aware that relating the cases under Local Rule 83-123 merely has the result that the three (3) actions are assigned to the same judge and magistrate judge; no consolidation of the actions is effected." (Order filed Dec. 24, 1997, in case No. CIV S-97-0164, case No. CIV S-97-1731, and case No. CIV S-97-2196, at 2.) Likewise, the related case order filed in the Hamby, Fenenbock, Frazier, Bond, and MacCarlie cases in 2001 states that "[t]he parties should be aware that relating these five cases under Local Rule 83-123 merely has the result that the actions are assigned to the same judge; no consolidation of the actions is effected." (Order filed Dec. 12, 2001, in case No. CIV S-97-0164, case No. CIV S-97-1731, case No. CIV S-97-2196, case No. CIV S-99-2150, and case No. CIV S-00-1830, at 2.)

Ground two:  The trial court committed reversible error in violation of petitioner's due process right not to be convicted except upon proof beyond a reasonable doubt of every element of the crime and his constitutional right to have his jury determine every factual issue in his case, when it failed to instruct the jury explicitly that a conviction of conspiracy to commit murder requires proof of the essential element that petitioner intended to kill the victim.

In his amended petition, petitioner Bond alleges his two original claims as Claims 9 and 10.  Respondents do not dispute the timeliness of new Claims 9 and 10, and the undersigned finds that those claims relate back to the claims in the original petition.

Petitioner Bond's new Claims 1-8 and 11-12, the timeliness of which are disputed, are summarized by the court as follows:

Ground 1:  Petitioner's rights to due process, a fair trial, to present a defense, and to confront witnesses under the Fifth, Sixth, and Fourteenth Amendments were violated when the trial court permitted the use of key witness Randy Hogrefe's testimony that was based on a false memory of how the killing occurred that was created by police, social worker, and prosecutorial manipulation, coercion, and coaching;

Ground 2:  Petitioner was denied his rights to due process, a fair trial, and to present a defense under the Fifth and Fourteenth Amendments by denial of defense access to Randy Hogrefe, the key prosecution witness;

Ground 3:  Petitioner's rights to due process under the Fifth and Fourteenth Amendments and to a jury trial under the Sixth and Fourteenth Amendments were violated by the reading of a scripted introduction to the jury which admitted elements of the offense and by the conducting of voir dire while petitioner was not present;

Ground 4:  Petitioner's rights to due process and against cruel and unusual punishment in violation of the Fifth, Eighth, and Fourteenth Amendments were violated because petition is an innocent man;

Ground 5:  Petitioner's right to due process under the Fifth and Fourteenth Amendments was violated by the use of unfair governmental investigative techniques that made it possible to present false and misleading evidence at trial and impossible to present a constitutionally adequate defense;

/////

Ground 6:  Petitioner was denied his rights to due process, a fair trial, and confrontation under the Fifth and Fourteenth Amendments by repeated prosecutorial misconduct;

Ground 7:  Petitioner's due process rights under the Fifth and Fourteenth Amendments were violated when the conspiracy conviction was based on overt acts that, as a matter of law, were not separate from the charged conspiracy agreement;

Ground 8:  Petitioner received ineffective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments as follows:

> 1.  Failure to retain or present expert testimony regarding eyewitnesses and memory to show how Randy Hogrefe's memories of the killing were false, unreliable and obtained by improper techniques;

> 2.  Failure to attack the adequacy of the overt acts charged in that none of overt acts 1 through 3 is independent of the conspiracy agreement;

> 3.  Failure to object to judge giving a scripted introduction, which conceded elements of the offense, during hardship voir dire and advising petitioner to waive his appearance during this crucial stage of the proceeding;

> 4.  Failure to adequately investigate, cross-examine, and challenge by moving to exclude the testimony of Michael Sutton, who provided the crucial testimony regarding the conspiracy;

> 5.  Failure to present evidence of Officer Kartchner's bad faith and dishonesty;

> 6.  Failure to object to repeated prosecutorial misconduct;

> 7.  Failure to investigate or present alibi evidence;

> 8.  Ineffective examination of Sue Mendes and failure to object to hearsay and prejudicial testimony;

> 9.  Failure to object to or make a record of police misconduct;

> 10.  Ineffective closing argument that failed to adequately address issues of conspiracy, lack of physical evidence, and police misconduct;

Ground 11:  Petitioner was deprived of effective assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments when counsel failed to raise the issues presented in the amended federal habeas petition and did not seek to expand his appointment to file a state habeas petition on petitioner's behalf;

Ground 12:  Petitioner's rights to due process under the Fifth and Fourteenth Amendments were violated by cumulative error and prejudice.

After careful consideration of petitioner's original and amended petitions, as well as the parties' arguments, the undersigned finds that petitioner's new Claim 7 shares a common core of operative facts with petitioner's original Claim 1, now alleged as Claim 10.  In this regard, new Claims 7 and 10 arise from the elements of the conspiracy charge, the evidence presented to support that charge, and the sufficiency of that evidence presented at trial to prove the elements of the charge.  The two new claims appear to merely assert different legal theories from those originally presented arising from a common core of operative facts.  In addition, Claim 12, alleging the cumulative effect of individual errors, therefore relates back to the original claims to the extent that petitioner asserts the combined prejudicial effect of the errors alleged in Claims 7, 9, and 10.

The same cannot be said, however, for the remainder of petitioner's new claims. Those claims do not share a common core of operative facts with either of petitioner's two original claims and therefore do not relate back to the original petition.  As set forth above, petitioner's original two claims were quite specific and limited.  Therein petitioner challenged only the trial court's failure to give a lesser related instruction on accessory after the fact and the trial court's finding that there were no lesser included offenses with respect to the charged conspiracy to commit murder.  On the other hand, petitioner Bond's new claims 1-8 and 11-12 present a broad ranging challenge to his judgment of conviction.  The grounds set forth in these new claims include that petitioner was: convicted of the conspiracy based upon false evidence tainted by prosecutorial and police misconduct; denied access to witness Hogrefe; convicted of conspiracy based upon overt acts not separate from the conspiracy as a matter of law; denied the

1   effective assistance of trial counsel in ten specific instances; denied the effective assistance of

2   appellate counsel; and denied a fair trial by the playing of the introductory videotape and by the

3   fact that he was convicted despite his innocence.  Petitioner Bond's original petition does not

4   recite any of the facts needed to support these new claims.  Thus, the original claims and new

5   claims are based upon completely separate sets of facts.

6          If respondents' motion to dismiss is granted, petitioner should be permitted to file

7   a second amended petition alleging the claims currently alleged in the first amended petition as

8   Claims 7, 9, and 10, along with a cumulative error claim (Claim 12) grounded on the prejudicial

9   effect of the errors alleged in Claims 7, 9, and 10.  So limited, petitioner's new claim of

10  cumulative error would arise from the same common core of operative facts alleged in the

11  original petition and would relate back to that pleading.  See Woodward v. Williams, 263 F.3d

12  1135, 1142 (10th Cir. 2001) (upholding relation back of a claim that was based on the same facts

13  as the original pleading but clarified or amplified the claim or theory), cited with approval in

14  Mayle, 125 S. Ct. at 2574 n.7.

15  III.  Equitable Tolling

16         The Ninth Circuit Court of Appeals determined in 1997 that the one-year period

17  of limitation contained in 28 U.S.C. § 2244(d) is a statute of limitations subject to tolling.

18  Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in

19  part on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530 (9th Cir.

20  1998).  The court cautioned that "[e]quitable tolling will not be available in most cases, as

21  extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's

22  control make it impossible to file a petition on time."  Calderon, 128 F.3d at 1288-89 (citing

23  Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1997)).  The availability of

24  equitable tolling of the AEDPA statute of limitations must be limited because courts are expected

25  to "take seriously Congress's desire to accelerate the federal habeas process."  128 F.3d at 1289.

26  /////

1    See Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (describing the Ninth Circuit's standard

2    as setting a "high hurdle" to the application of equitable tolling).

3            Even where extraordinary circumstances are shown, equitable tolling will not be

4    available unless the petitioner diligently pursued his claims.  128 F.3d at 1289.  It is only when

5    external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely

6    habeas petition that equitable tolling may be appropriate.  Miles v. Prunty, 187 F.3d 1104, 1107

7    (9th Cir. 1999).  The petitioner bears the burden of demonstrating grounds for equitable tolling.

8    Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005); Miranda v. Castro, 292

9    F.3d 1063, 1065 (9th Cir. 2002).

10           Since recognizing the availability of equitable tolling of the AEDPA context in

11   1997, the Ninth Circuit Court of Appeals has addressed the issue many times.  For the most part,

12   and most often in unpublished decisions, the appellate court has affirmed district court decisions

13   denying equitable tolling.  Typical decisions affirming the denial of equitable tolling include

14   Miranda v. Castro, 292 F.3d 1063, 1067-68 (9th Cir. 2002), in which the court affirmed the

15   district court's denial of equitable tolling where the pro se petitioner filed his petition untimely

16   on the basis of erroneous information provided by the attorney appointed to represent him on

17   direct appeal, and Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001), in which the court

18   affirmed the district court's denial of equitable tolling where the petitioner's attorney

19   miscalculated the limitations period.  In Brambles v. Duncan, 412 F.3d 1066, 1070-71 (9th Cir.),

20   cert. denied, ___ U.S. ___, 126 S. Ct. 485 (2005), the Ninth Circuit recently affirmed the district

21   court's denial of equitable tolling where the petitioner filed an untimely petition after he had

22   previously filed a timely mixed petition but, pursuant to district court instructions that were not

23   affirmatively misleading, chose to dismiss the entire petition and return to state court to exhaust

24   additional claims.  See also Raspberry v. Garcia, 448 F.3d 1150, 1153-54 (9th Cir. 2006)

25   (affirming the denial of equitable tolling because neither the district court's failure to advise the

26   petitioner of the right to amend his petition to include unexhausted claims nor petitioner's

1  inability to correctly calculate the limitations period were extraordinary circumstances warranting

2  equitable tolling).

3           Due to the highly fact-dependent nature of the grounds for equitable tolling, the

4  Ninth Circuit has occasionally remanded a case for further factual development of an issue such

5  as a petitioner's mental illness, a petitioner's access to his legal materials, and the adequacy of a

6  particular prison law library at a specific time.  See, e.g., Mendoza v. Carey, 449 F.3d 1065,

7  1069-71 (9th Cir. 2006) (remanding for appropriate development of the record on the issue of

8  whether petitioner's inability to obtain Spanish-language materials or procure translation

9  assistance was an extraordinary circumstance preventing him from filing a timely habeas

10 petition); Laws v. Lamarque, 351 F.3d 919, 922-24 (9th Cir. 2003) (remanding for development

11 of the record or an evidentiary hearing on the issue of whether the petitioner's mental illness

12 prevented him from timely filing his habeas petition); Lott v. Mueller, 304 F.3d 918, 923 (9th

13 Cir. 2002) (remanding for development of the record related to the availability of equitable

14 tolling where the petition was filed, at most, twenty days late, and the pro se petitioner alleged in

15 his traverse that he was denied access to his legal files for eighty-two days during the one-year

16 period of limitation due to two temporary transfers for court proceedings in an unrelated civil

17 court matter); Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding

18 for further factual development related to the availability of equitable tolling or a finding of a

19 state-caused impediment under § 2244(d)(1)(B) where the petitioner alleged that the prison law

20 library contained no legal materials describing the AEDPA and its one-year limitations period

21 until June of 1998).

22          The Ninth Circuit has affirmed or mandated equitable tolling in the relatively few

23 cases where a diligent petitioner was unable to file a timely petition due to a significant delay

24 caused by an external force such as the district court, prison officials, or, but rarely, the

25 petitioner's own habeas counsel.  See Espinoza-Matthews v. California, 432 F.3d 1021 (9th Cir.

26 2005) (applying equitable tolling for the period of almost eleven months during which the pro se

1   petitioner was housed in administrative segregation for his own protection and was denied access

2   to his legal materials throughout that time despite his diligent efforts to obtain access); Spitsyn v.

3   Moore, 345 F.3d 796 (9th Cir. 2003) (finding the misconduct of the petitioner's attorney

4   sufficiently egregious to justify equitable tolling where the attorney was hired nearly a full year in

5   advance of the deadline for filing a federal petition but did not prepare and file the petition

6   despite the fact that the petitioner and his mother contacted the attorney numerous times seeking

7   action and where, despite a request for return of the file, the attorney retained the file for the

8   duration of the limitations period and two months beyond); Smith v. Ratelle, 323 F.3d 813 (9th

9   Cir. 2003) (applying equitable tolling where the district court had previously dismissed the pro se

10  petitioner's timely habeas petition without giving him an opportunity to file an amended petition

11  as an alternative to dismissal); Stillman v. LaMarque, 319 F.3d 1199 (9th Cir. 2003) (applying

12  equitable tolling where the prison litigation coordinator promised the petitioner's attorney that he

13  would obtain the prisoner's signature in time for filing the petition but broke his promise and

14  caused the petition to be late); Corjasso v. Ayers, 278 F.3d 874 (9th Cir. 2002) (applying

15  equitable tolling where the district court's initial dismissal of a timely petition was improper and

16  the court's lengthy delay in ruling that the amended petition was unexhausted consumed 258

17  days of the pro se petitioner's one-year period of limitation and caused the petitioner to lose time

18  that would otherwise have been available for exhausting state court remedies); Miles v. Prunty,

19  187 F.3d 1104 (9th Cir. 1999) (applying equitable tolling where prison officials delayed the pro

20  se petitioner's request that a check be drawn on his prison trust account for payment of the filing

21  fee); Calderon (Kelly), 163 F.3d 530 (applying equitable tolling in a death penalty case because

22  of an earlier court-ordered stay of the habeas proceedings, the petitioner's alleged mental

23  incompetency, and the court's mistaken dismissal of the timely habeas proceedings); Calderon

24  (Beeler), 128 F.3d 1283 (holding in a death penalty case that the withdrawal of court-appointed

25  habeas counsel, who moved out of state and whose work product was not usable by replacement

26  /////

1   counsel, qualified as an extraordinary circumstance beyond petitioner's control that justified

2   tolling the statute of limitations).

3           Although the Supreme Court has recently "framed the equitable tolling standard in

4   less absolute terms" than the Ninth Circuit's well established test of "impossible to file a petition

5   on time," the Ninth Circuit has not yet decided whether the Supreme Court's formulation "has

6   lowered the bar somewhat." Espinoza-Matthews v. California, 432 F.3d 1021, 1026 n.5 (9th Cir.

7   2005) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In Pace, the Court noted that it

8   has "never squarely addressed the question whether equitable tolling is applicable to AEDPA's

9   statute of limitations." 544 U.S. at 418 n.8. The Court found it unnecessary to reach the

10  question in Pace because the petitioner's failure to establish diligence would preclude the

11  application of equitable tolling to his untimely petition. Id. at 418-19. The Court observed that

12  "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements:

13  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

14  stood in his way." 544 U.S. at 418 (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89,

15  96 (1990)). See also Raspberry, 448 F.3d at 1153.

16          In the five related cases before this court, the petitioners rely in part on Justice

17  Stevens's concurrence in Duncan v. Walker, 533 U.S. 182 (2001) (Stevens, J., concurring in part

18  and concurring in the judgment). Justice Stevens, joined by Justice Souter, agreed with the

19  Court's decision that the statutory tolling provision contained in § 2244(d)(2) authorizes tolling

20  while a petitioner is pursuing state, but not federal, post-conviction remedies. Id. Citing the

21  general equitable powers of federal courts, Justice Stevens observed that those courts may deem

22  a limitations period tolled as a matter of equity and "might very well conclude that tolling is

23  appropriate based on the reasonable belief that Congress could not have intended to bar habeas

24  review for petitioners who invoke the court's jurisdiction within the 1-year interval prescribed by

25  AEDPA." Id. at 182-83. He speculated that, just as the federal courts of appeals uniformly

26  created a one-year grace period running from the date of AEDPA's enactment for all prisoners

41

whose state convictions became final prior to AEDPA, "federal courts may well conclude that Congress simply overlooked the class of petitioners whose timely filed habeas petitions remain pending in district court past the limitations period, only to be dismissed after the court belatedly realizes that one or more claims have not been exhausted." Id. at 183-84.  However, equitable tolling was not the only remedy suggested by Justice Stevens for the class of petitioners he described.  He also found "no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies," especially when failure to do so would foreclose federal review of a meritorious claim because of the limitations period.  Id. at 183.  See also id. at 182 (Souter, J. concurring) ("I have joined Justice Stevens's separate opinion pointing out that nothing bars a district court from retaining jurisdiction pending complete exhaustion of state remedies, and that a claim for equitable tolling could present a serious issue on facts different from those before us.").

The Ninth Circuit has not hesitated to use its equitable powers to protect petitioners in the class described by Justice Stevens.  A stay-and-abeyance procedure was approved by the Ninth Circuit soon after AEDPA was enacted.  See Calderon v. United States Dist. Court (Thomas), 144 F.3d 618, 620 (9th Cir. 1998) (endorsing a procedure permitting withdrawal of unexhausted claims and abeyance); Calderon v. United States Dist. Court (Taylor), 134 F.3d 981, 987-88 (9th Cir. 1998) (recognizing the district court's authority to allow a petitioner to amend a mixed petition to delete unexhausted claims and then hold the completely exhausted petition in abeyance pending exhaustion); Greenawalt v. Stewart, 105 F.3d 1268, 1274 (9th Cir. 1997) (recognizing that the district court has discretion to stay a fully exhausted petition).  See also Fetterly v. Paskett, 997 F.2d 1295, 1301-02 (9th Cir. 1993) (holding in a pre-AEDPA case that the district court abused its discretion in denying a capital habeas petitioner's motion to stay a petition containing only exhausted claims pending exhaustion of additional claims in state court).  The Ninth Circuit has also applied the alternate remedy of equitable tolling where a diligent petitioner was unable to file a timely petition due to an improper

1   dismissal or other mishandling and consequent delay caused by the district court.  See Smith, 323

2   F.3d 813; Corjasso, 278 F.3d 874; Calderon (Kelly), 163 F.3d 530.  Moreover, in applying

3   equitable tolling in Corjasso, decided after Duncan, the court commented that its decision to toll

4   the statute "during part of the pendency of [Corjasso's first federal habeas case] is not contrary to

5   the rule in Duncan, for we do not hold that equitable tolling of the statute is appropriate for the

6   entire time Corjasso's petitioner remained in federal court" but "only during the delay caused by

7   the extraordinary circumstances beyond Corjasso's control."  278 F.3d at 879.

8           The petitioners in the five related cases before this court do not fall within the

9   class of petitioners described by Justice Stevens in his concurring opinion in Duncan.  Here, the

10   five petitioners filed timely habeas petitions raising only exhausted claims.  Their petitions were

11   not dismissed, and all five petitioners are proceeding in their original federal habeas actions.

12   These petitioners did not invoke the court's jurisdiction over meritorious claims within the one-

13   year interval prescribed by AEDPA, only to find habeas review of those claims forever barred

14   due to the court's failure to retain jurisdiction over the timely-filed claims while the petitioners

15   returned to state court to exhaust additional claims.  Nor are these petitioners and the petitioner in

16   Corjasso similarly situated.  Corjasso, 278 F.3d at 878 (applying equitable tolling where the

17   district court's initial dismissal of a timely petition was improper and the court's lengthy delay in

18   ruling that the amended petition was unexhausted consumed 258 days of the pro se petitioner's

19   one-year period of limitation and caused the petitioner to lose time that would otherwise have

20   been available for exhausting state court remedies).

21           Petitioner Bond contends that the statute of limitations should be tolled for the

22   entire period of time between the filing of his original federal petition on October 29, 1999, and

23   the filing of his amended federal petition on September 2, 2003, because the complexity of the

24   five cases, respondents' lack of objection to continuances requested by petitioners, and the

25   necessity of filing a properly pled and supported exhaustion petition made it impossible to file all

26   of his claims in federal court prior to the expiration of the statute of limitations.  Petitioner's

counsel has admitted, however, that, had she realized respondents would assert the statute-of-limitations defense to bar new claims, she "may have been able to notify respondent earlier of potential claims under investigation."

The undersigned finds that equitable tolling should be applied during a portion of these federal proceedings, but, as the Ninth Circuit held in Corjasso, "only during the delay caused by the extraordinary circumstances beyond [petitioner's] control." 278 F.3d at 879. Petitioner Bond was not present during the separate trials of his co-defendants, had no access to the transcripts of the trials that preceded and followed his own, was in custody during pretrial litigation, was incarcerated after sentencing, and was unrepresented after the California Supreme Court denied review on direct appeal on June 30, 1999. Petitioner nevertheless filed a timely federal habeas petition on October 29, 1999. Counsel was appointed for petitioner on December 30, 1999, almost nine months before the AEDPA statute of limitations expired on September 28, 2000, under § 2244(d)(1)(A). By April 4, 2000, petitioner Bond's counsel had consulted with counsel for petitioners Fenenbock and Frazier and had obtained copies of the complete record of petitioner Bond's trial. (See Pet'r Bond's Initial Status Report filed Apr. 28, 2000, Weston Decl. ¶ 3.) Because counsel for petitioners Hamby, Fenenbock, and Frazier had compiled a substantially complete state court record for all three trials by August 31, 1998, petitioner Bond's counsel had a copy of the record of petitioner Bond's trial and access to the complete record of all three trials by April 4, 2000.[4]

The undersigned finds that any delay caused by extraordinary circumstances beyond petitioner Bond's control ended by at least April 4, 2000. While the state court record is voluminous, petitioner Bond has not shown that it was impossible to identify new claims and

---

[4] Although petitioner Bond's counsel sought the trial files for petitioner Bond and the two co-defendants tried with him, she learned that trial counsel for petitioner Bond had destroyed his files, as had co-defendant Dodds' trial counsel, and petitioner MacCarlie's trial files were destroyed in a fire. (See Pet'r Bond's Status Report filed Oct. 17, 2001, Weston Decl. ¶ 4.) Petitioner Bond's counsel had to rely on the discovery materials already compiled by counsel for petitioners Hamby, Fenenbock, and Frazier and the part of the record available to counsel prior to April 4, 2000.

1   seek a stay within one year after April 4, 2000.  Equitable tolling from September 28, 1999, when

2   petitioner Bond's judgment became final, to April 4, 2000, when extraordinary circumstances

3   beyond petitioner's control ceased to exist, does not render petitioner's amended federal petition

4   timely.  The one-year period of limitation began to run on April 5, 2000, and expired on April 4,

5   2001.  The state exhaustion petition filed by petitioner Bond on August 20, 2002, was filed more

6   than a year too late to toll the statute under § 2244(d)(2), and the amended federal petition filed

7   in 2003 was filed approximately two and a half years late.

8          Other arguments advanced by the petitioners in favor of additional equitable

9   tolling are unpersuasive.  It is undisputed that respondents' counsel stipulated to continuances of

10  status conferences up to October 2001 and did not object to continuances of various deadlines

11  and hearing dates.  However, the petitioners have not demonstrated that the respondents waived

12  the statute of limitations, and there is no evidence that petitioners were affirmatively misled by

13  respondents or by the court with regard to the statute of limitations.[5]  The need to prepare and file

14  state exhaustion petitions was not an external force that made it impossible for petitioner Bond to

15  prepare and file his state exhaustion petition within a year after April 4, 2000.

16         The petitioner in this case is not entitled to equitable tolling for a period of time

17  sufficient to render his amended petition timely.

18  IV.  Actual Innocence

19         A habeas petitioner's "otherwise-barred claims [may be] considered on the merits

20  . . . if his claim of actual innocence is sufficient to bring him within the 'narrow class of cases . . .

21  implicating a fundamental miscarriage of justice.'"  Carriger v. Stewart, 132 F.3d 463, 477 (9th

22  Cir. 1997) (quoting Schlup v. Delo, 513 U.S. 298, 315 (1995)).  The petitioner's claim of actual

23  innocence must be supported "with new reliable evidence–whether it be exculpatory scientific

24

25         [5] Indeed, at least as early as April 2000 counsel for respondent was suggesting in opposition
    to a discovery motion that any new claims presented in an amended petition may be procedurally
26  barred.

45

evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented

at trial." Schlup, 513 U.S. at 324. The petitioner "must show that, in light of all the evidence,

including evidence not introduced at trial, 'it is more likely than not that no reasonable juror

would have found petitioner guilty beyond a reasonable doubt.'" Majoy v. Roe, 296 F.3d 770,

776 (9th Cir. 2002) (quoting Schlup, 513 U.S. at 327). See also Griffin v. Johnson, 350 F.3d

956, 962-63 (9th Cir. 2003); Sistrunk v. Armenakis, 292 F.3d 669, 672-73 (9th Cir. 2002) (en

banc); Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002). Where a habeas petitioner

alleges actual innocence, the federal court must first consider all alternative grounds for relief

from default that might obviate the need to reach the actual innocence question. Dretke v. Haley,

541 U.S. 386, 388-89 (2004).

Having considered all alternative grounds for relief from default above, the

undersigned turns to petitioner Bond's claim of actual innocence. In order to decide whether

petitioner's actual innocence claim brings his entire amended petition within an exception to the

AEDPA statute of limitations, the court must determine whether petitioner's claim of actual

innocence is supported by new reliable evidence that would have affirmatively proved his actual

innocence had that evidence been presented at trial. The undersigned has carefully considered

the claim of actual innocence as alleged in petitioner's first amended petition as well as all

arguments concerning the evidence presented at petitioner Bond's trial and the new evidence

cited by petitioner as evidence of actual innocence. (See Pet'r Bond's First Am. Pet. at 7-17 &

35-36; Pet'r Bond's Opp'n to Resp'ts' Second Mot. to Dismiss filed Aug. 23, 2005, at 27-29;

Resp'ts' Reply to Pet'r Bond's Opp'n filed Sept. 2, 2005, at 14-16.) Petitioner Bond's new

evidence, consisting primarily of co-defendant MacCarlie's testimony during the Bond-

MacCarlie trial and a pretrial statement allegedly made by Michael Sutton to a defense

investigator in November 1993, falls far short of presenting "'evidence of innocence so strong

that a court cannot have confidence in the outcome of the trial.'" Sistrunk, 292 F.3d at 673

(quoting Schlup, 513 U.S. at 316).

1     In this regard, MacCarlie's testimony at his own subsequent trial cannot be

2  characterized as either compelling or exculpatory as to petitioner.  In that testimony MacCarlie

3  described being outside his body, looking down on the scene of the killing from a tree and

4  watching a man with his own face knock Summar to the ground and stab him numerous times.

5  Nonetheless, MacCarlie testified that he didn't believe he killed Summar.  Defense expert

6  witnesses testified that MacCarlie suffered from alcoholic blackouts and Post-Traumatic Stress

7  Disorder, both of which could render him unable to distinguish reality from fantasy.  The

8  statement given by Sutton in which he characterized the killing of Summar as "no big

9  conspiracy" but rather as something that "apparently" took place "in the heat of the moment"

10 likewise cannot be fairly characterized as compelling new evidence of Bond's innocence so

11 strong that a court cannot have confidence in the verdict.  This statement by Sutton was offered

12 into evidence by the defense at the trial of Hamby, Fenenbock and Frazier, a trial that preceded

13 petitioner Bond's trial.  The prosecution's objection to the evidence was sustained with the trial

14 court finding that it amounted to nothing more than Sutton's opinion.

15    Given the absence of new reliable evidence, petitioner Bond does not have a

16 colorable claim of actual innocence pursuant to Schlup.  Due to the inadequacy of petitioner's

17 supporting evidence, his claim of actual innocence fails to bring him within the "'narrow class of

18 cases . . . implicating a fundamental miscarriage of justice.'"  Carriger, 132 F.3d at 477 (quoting

19 Schlup, 513 U.S. at 315).  Petitioner Bond's amended petition is not rendered timely by his claim

20 of actual innocence.

21                              CONCLUSION

22    IT IS RECOMMENDED that respondents' August 4, 2005 motion to dismiss be

23 granted with leave to file a second amended petition alleging the claims alleged in petitioner's

24 first amended petition as Claims 7, 9, and 10, along with a cumulative error claim, if appropriate,

25 grounded solely on the prejudicial effect of the errors alleged in those three claims.

26 /////

47

1        These findings and recommendations will be submitted to the United States

2 District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

3 twenty days after being served with these findings and recommendations, any party may file and

4 serve written objections with the court.  A document containing objections should be titled

5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

6 shall be filed and served within ten days after service of the objections.  The parties are advised

7 that failure to file objections within the specified time may, under certain circumstances, waive

8 the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

9 1991).

10 DATED: September 11, 2006.

11

12                                  _Dale A. Drozd_

13                            DALE A. DROZD
                           UNITED STATES MAGISTRATE JUDGE

14 DAD:13
bond2150.mtd2

15

16

17

18

19

20

21

22

23

24

25

26

48